IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| JEFFERY D. JOHNSTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:15-CV-01000-DGK-SSA |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER AFFIRMING THE COMMISSIONER'S DECISION

This action is for judicial review of the Acting Commissioner of Social Security's ("Commissioner") decision denying Plaintiff Jeffery Johnston's ("Plaintiff") application for Social Security disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401–434. The Administrative Law Judge ("ALJ") found Plaintiff had numerous severe impairments but retained the residual functional capacity ("RFC") to work as a surveillance system monitor, food and beverage order clerk, and medical supplies packager.

After carefully reviewing the record and the parties' arguments, the Court finds the ALJ's opinion is supported by substantial evidence on the record as a whole. The Commissioner's decision is AFFIRMED.

**Procedural and Factual Background**

The complete facts and arguments are presented in the parties' briefs and are repeated here only to the extent necessary.

Plaintiff filed his application for disability insurance benefits on April 19, 2012, alleging a disability onset date of November 15, 2011. The Commissioner denied the application at the initial claim level, and Plaintiff appealed the denial to an ALJ. The ALJ held a video hearing on

April 24, 2014, and on May 13, 2014, issued a decision finding Plaintiff was not disabled. The Appeals Council denied Plaintiff's request for review on October 19, 2015, leaving the ALJ's decision as the Commissioner's final decision. Plaintiff has exhausted all administrative remedies and judicial review is now appropriate under 42 U.S.C. § 405(g).

## Standard of Review

The Commissioner follows a five-step sequential evaluation process[1] to determine whether a claimant is disabled, that is, unable to engage in any substantial gainful activity by reason of a medically determinable impairment that has lasted or can be expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A).

A federal court's review of the Commissioner's decision to deny disability benefits is limited to determining whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011). Substantial evidence is less than a preponderance, but enough evidence that a reasonable mind would find it sufficient to support the Commissioner's decision. *Id.* In making this assessment, the court considers evidence that detracts from the Commissioner's decision, as well as evidence that supports it. *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). The court must "defer heavily" to the Commissioner's findings and conclusions. *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The court may reverse the Commissioner's decision only if it falls outside of the

---

[1] "The five-step sequence involves determining whether (1) a claimant's work activity, if any, amounts to substantial gainful activity; (2) his impairments, alone or combined, are medically severe; (3) his severe impairments meet or medically equal a listed impairment; (4) his residual functional capacity precludes his past relevant work; and (5) his residual functional capacity permits an adjustment to any other work. The evaluation process ends if a determination of disabled or not disabled can be made at any step." *Kemp ex rel. Kemp v. Colvin*, 743 F.3d 630, 632 n.1 (8th Cir. 2014); *see* 20 C.F.R. § 404.1520(a)–(g). Through step four of the analysis the claimant bears the burden of showing that he is disabled. After the analysis reaches step five, the burden shifts to the Commissioner to show that there are other jobs in the economy that the claimant can perform. *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009).

available zone of choice, and a decision is not outside this zone simply because the court might have decided the case differently were it the initial finder of fact. *Buckner*, 646 F.3d at 556.

## Discussion

Plaintiff argues the ALJ's decision should be reversed or remanded because: (1) the RFC determination is unsupported by substantial evidence; and (2) the Commissioner did not sustain her burden at step five.

**I.  The ALJ's RFC determination is supported by substantial evidence.**

With respect to his RFC, the ALJ found Plaintiff possessed the ability

> to perform sedentary work . . . except for the following nonexertional limitations that reduce the claimant's capacity for sedentary work: can never climb ladders, ropes or scaffolds; can never use power tools; can only occasionally stoop, kneel, crouch, and crawl; must avoid concentrated exposure to vibration; and must avoid all exposure to hazards, such as dangerous machinery and unprotected heights.

R. at 20. Plaintiff argues the ALJ's RFC determination is not supported by substantial evidence because the ALJ: (1) failed to discuss and identify the weight given to Plaintiff's wife's testimony at the hearing; (2) failed to consider Plaintiff's obesity; (3) rejected the opinion of Dr. Long; (4) failed to identify limitations on the basic exertional activities of the RFC; (5) improperly relied on Plaintiff's daily activities; (6) incorrectly interpreted Dr. Fields' opinion; and (7) improperly concluded Plaintiff stopped working because he was laid off rather than because he was disabled. These arguments are without merit.

**A.  Remand for the ALJ to comment on the testimony of Plaintiff's wife is not necessary.**

First, Plaintiff argues the Court should reverse or remand because the ALJ failed to discuss and identify the weight she gave to Plaintiff's wife's ("Ms. Johnston") in court

testimony.  The Commissioner argues the ALJ is not required to list every piece of evidence considered and that Ms. Johnston's testimony was duplicative of Plaintiff's testimony.

As a threshold matter, the Court infers from the record that the ALJ considered Ms. Johnston's testimony.  Ms. Johnston testified in person via videoconference; in fact, she testified for several minutes.  R. at 69-74.  This is not a case where the ALJ overlooked a third-party statement the claimant submitted in writing.  Although the ALJ does not specifically mention Ms. Johnston's testimony, she does mention third-party testimony as a factor considered when evaluating Plaintiff's subjective complaints.  R at 23.  The ALJ's failure to explicitly acknowledge Ms. Johnston's testimony in her decision is not grounds for reversal or remand. *See, e.g.*, *Wildman v. Astrue*, 596 F.3d 959, 966 (8th Cir. 2010) (stating the ALJ need not discuss every piece of evidence contained in the record).

But even if the Court did not infer that the ALJ considered her testimony, any error here was harmless.  Where it is unclear whether the ALJ considered a third-party statement, remand is not always required.  *Buckner*, 646 F.3d at 559-60.  When the statements made by third parties are not redundant to the testimony of the claimant, remand may be appropriate.  *Nowling v. Colvin*, 813 F.3d 1110, 1121-22 (8th Cir. 2016) (finding remand appropriate when the ALJ failed to consider third-party testimony that was neither redundant with claimant's testimony nor discredited by the same evidence discrediting claimant's testimony).  In the present case, Ms. Johnston's testimony largely duplicated her husband's testimony.  *Compare* R. at 44-59 (Plaintiff has memory problems; has trouble going to sleep; does housework; cooks; and acts as assistant basketball coach for daughter's team), *with* R. at 70-73 (Plaintiff is in pain all of the time; watches the children's basketball games and attends their sporting events; can't sleep; does housework; feeds the children; and has short-term memory loss).  The only possible

4

inconsistency is that Plaintiff stated he goes shopping once or twice a week for necessities, while Ms. Johnson stated she does the grocery shopping. *Compare* R. at 50, *with* R. at 72. As discussed below, the ALJ found Plaintiff's testimony was not fully credible because it was inconsistent with the record as a whole. Thus, at worst, the ALJ's failure here to discuss Ms. Johnston's testimony is a deficiency in opinion-writing technique that had no bearing on the outcome and does not warrant remand. *See Buckner*, 646 F.3d at 560.

### B. The ALJ properly considered Plaintiff's obesity in formulating his RFC.

Next, Plaintiff contends the ALJ ignored the impact of Plaintiff's obesity in identifying limitations to his RFC. Plaintiff overlooks the relevant portions of the ALJ's decision.

The ALJ addressed Plaintiff's obesity at step two of the sequential evaluation process, noting Plaintiff was obese and that impairment "may result in limitations of function." R. at 18. The ALJ stated Plaintiff's obesity was taken into consideration in reaching the conclusions in steps two through five, even though none of his treating medical sources "specifically attributed additional or cumulative limitations [to his] obesity." R. at 18-19. The ALJ even cites to the regulation governing the evaluation of obesity, SSR 02-1p, 2002 WL 34686281 (Sept. 12, 2002). And Plaintiff failed to present evidence of any functional limitations resulting specifically from his obesity. *See Forte v. Barnhart*, 377 F.3d 892, 896 (8th Cir. 2004) (rejecting claimant's argument that the ALJ erred in failing to consider his obesity in assessing his RFC, explaining "[a]lthough his treating doctors noted that [the claimant] was obese and should lose weight, none of them suggested his obesity imposed any additional work-related limitations, and he did not testify that his obesity imposed additional restrictions."); *see also Box v. Shalala*, 52 F.3d 168, 171 (8th Cir. 1995) (stating the lack of discussion in the ALJ's decision about the claimant's obesity is not fatal where "[t]here is in fact no evidence in the record that his obesity imposed

any limitations on his ability to work. There was no testimony at the hearing or medical evidence submitted regarding limitations imposed by his weight.). Thus, this argument is without merit.

### C. The ALJ did not err in weighing the medical opinion evidence from Dr. Long.

Next, Plaintiff contends the ALJ erred by "rejecting" his treating physician's opinion and by failing to provide good reasons for this rejection.

As a threshold matter, the ALJ did not "reject" C.W. Long, M.D.'s ("Dr. Long") opinion. She considered it, compared it to the other objective medical evidence, and assigned it "little weight." She specifically mentions in her opinion, "Dr. Long's opinions have not been ignored." R. at 26.

To the extent Plaintiff argues the ALJ did not afford adequate weight to Dr. Long's opinion, that is also without merit. Where the record contains differing medical opinions, it is the ALJ's responsibility to resolve conflicts among them. *Finch v. Astrue*, 547 F.3d 933, 936 (8th Cir. 2008). The ALJ must assign controlling weight to a treating physician's opinion if that opinion is well-supported and consistent with other evidence in the record. 20 C.F.R. § 404.1527(c)(2). It is settled that "an ALJ may credit other medical evaluations over that of the treating physician when such other assessments are supported by better or more thorough medical evidence." *Martise v. Astrue*, 641 F.3d 909, 925 (8th Cir. 2011). And "It is well established that an ALJ may grant less weight to a treating physician's opinion when that opinion conflicts with other substantial medical evidence contained within the record." *Prosch v. Apfel*, 201 F.3d 1010, 1013-14 (8th Cir. 2000). But if an ALJ discounts a treating physician's opinion, he must give "good reasons" for doing so. *Dolph v. Barnhart*, 308 F.3d 876, 878-79 (8th Cir. 2002).

Here, the ALJ gave Dr. Long's opinion little weight because his opinion contained limitations that were not mentioned in the medical records and not supported by objective testing or reasoning indicating Plaintiff's functioning would be so restricted. R. at 25. The record supports this decision. For example, Dr. Long stated Plaintiff had permanently disabling back pain. R. at 520-23. But Plaintiff testified he was able to walk one or two miles, dress and bathe independently, drive, act as an assistant basketball coach for his daughter's team, and do housework. R. at 45-46, 48-50, 54-55. The ALJ also gave little weight to Dr. Long's opinion because it was inconsistent with the other medical evidence on the record as well as Plaintiff's own testimony. No other treating physician stated Plaintiff was "totally disabled." Thus, based on the plain inconsistency with the record as a whole, the ALJ properly assigned little weight to Dr. Long's opinion. *See Goff v. Barnhart*, 421 F.3d 785, 790-91 (8th Cir. 2005) ("[A]n appropriate finding of inconsistency with other evidence alone is sufficient to discount [the treating physician's] opinion."). This argument is also meritless.

### D. The ALJ did not err by failing to assess exertional limitations on the RFC.

Plaintiff next argues the ALJ erred by merely stating that Plaintiff was capable of "sedentary work" without making any specific findings on "Plaintiff's actual ability to walk, stand, sit, or push, and pull." Pl. Br. at 9. Plaintiff contends the ALJ's failure to specify the details of his functional limitations amounts to reversible error.

The ALJ need not make specific findings in the RFC for every functional limitation included in 20 C.F.R. § 404.1545(b). *Depover v. Barnhart,* 349 F.3d 563, 567 (8th Cir. 2003). If the ALJ makes explicit findings of limitations on some functions, it is implied that the other functions are not limited. *Id.* at 567-68. Remand is not required if there is substantial evidence supporting the ALJ's implicit findings. *Id.* at 568.

7
Case 4:15-cv-01000-DGK   Document 15   Filed 12/05/16   Page 7 of 10

Here, the ALJ did not simply describe the RFC in "general terms." *Compare Depover*, 349 F.3d at 568 (remand not necessary in order to make implicit RFC limitations explicit), *with Pfitzner v. Apfel*, 169 F.3d 566, 569 (8th Cir. 1999) (remand required because ALJ only described RFC in general terms and failed to specify any specific limitations on the RFC). While it would have been preferable for the ALJ to make explicit findings as to sitting, standing, and walking, it doesn't appear that she overlooked those functions. The ALJ listed non-exertional limitations to the RFC, giving reason to believe that the functions that were omitted were those that were not limited. *See Depover*, 349 F.3d at 567.

### E. The ALJ did not err by considering Plaintiff's activities of daily living in making a credibility determination.

Next, Plaintiff argues that the ALJ erred in considering his ability to perform daily activities. Pl.'s Br. at 13-15.

An ALJ must consider a claimant's ability to perform daily activities as part of the credibility analysis. *See* 20 C.F.R. § 404.1529; *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1994). The claimant's activities of daily living, along with medical opinions and other testimony, can establish substantial evidence to support an ALJ's finding that the claimant's testimony is not credible. *Tellez v. Barnhart*, 403 F.3d 953, 957 (8th Cir. 2005) (holding there was substantial evidence supporting the ALJ's finding that the claimant was not credible after the ALJ considered the claimant's daily activities along with other evidence).

As discussed throughout this order, the ALJ considered Plaintiff's activities of daily living in conjunction with other record evidence. R. at 21, 23-25. Here, Plaintiff reported being able to prepare meals, launder, keep house picked up, mow, go outside alone daily, walk, manage his finances, watch television, and attend his children's events. R. at 228-33. The ALJ

did not err in considering these activities in making a credibility determination. *See* 20 C.F.R. § 404.1529; *Polaski*, 739 F.2d at 1322.

### F. The ALJ did not misinterpret Dr. Fields' opinion and the ALJ was not required to contact Dr. Fields.

Plaintiff contends the ALJ erred with respect to the medical opinion of Ronald K. Fields, M.D. ("Dr. Fields"). First, Plaintiff argues that the ALJ misinterpreted Dr. Fields' opinion. Pl. Br. at 12. After a review of Dr. Fields' opinion, the Court finds this argument is meritless.[2]

Second, Plaintiff argues the ALJ was required to contact Dr. Fields if she believed his conclusions were reserved for the Commission. Social Security regulations state "[b]ecause treating source evidence (including opinion evidence) is important, if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make 'every reasonable effort' to re-contact the source for clarification of the reasons for the opinion." SSR 96–5p, 1996 WL 374183, at *2 (July 2, 1996). Here, Dr. Fields opined Plaintiff was unable to return to his previous work, but also discussed this conclusion in the context of Plaintiff's symptoms, such as the risk of falling due to his seizures and the persistent back pain from his vertebral fractures. R. at 471-73. The ALJ assigned partial weight and stated that his opinion was not ignored. Because the record clearly demonstrates the basis for Dr. Fields' opinion, the ALJ was not required to contact Dr. Fields.

---

[2] The ALJ characterized the opinion as stating "the claimant retained significant functioning and could perform other work." R. at 26. Dr. Fields wrote two separate letters discussing his opinion. In his first letter, Dr. Fields stated he "encouraged [Plaintiff] to consider job retraining, short-term disability options, and even . . . long-term disability." R. at 173. In his second letter, he recommended Plaintiff "look into the possibility of a job retraining program for a different line of work." R. at 471. Plaintiff argues Dr. Fields' reference to "job retraining" was not to indicate he was of the opinion that Plaintiff was not disabled, but rather that *if* Plaintiff "was capable of work, he would require re-training." Pl. Br. at 12. The ALJ stated in her opinion that by suggesting Plaintiff should seek out job retaining, Dr. Fields was of the opinion that Plaintiff could perform other work. After a review of Dr. Fields' statements, the Court concludes none were conditional or predicated on *if* Plaintiff was capable of work.

### G. The ALJ did not improperly conclude Plaintiff stopped working because he was laid off rather than because he was disabled.

Plaintiff's argument that the ALJ incorrectly concluded Plaintiff stopped working because he was laid off and not disabled is without merit. Plaintiff worked for many years despite his seizure impairment. R. at 37–38, 145. He initially stopped working not because of his impairments, but because he was laid off. R. at 38, 160. The ALJ fairly held this detracted from Plaintiff's credibility. *See Milam v. Colvin*, 794 F.3d 978, 985 (8th Cir. 2015) (Offsetting the claimant's lengthy work history, is the fact that she was "laid off from her position, rather than forced out due to her condition.").

## II. The ALJ did not err at step five because the RFC was determination was not flawed.

Finally, Plaintiff contends the ALJ erred at step five because the hypothetical to the vocational expert ("VE") was flawed. Plaintiff's argument assumes that the ALJ's RFC determination was flawed, but—as discussed in part I above—it is supported by substantial evidence. Thus, the premise of Plaintiff's argument is not satisfied. Accordingly, the ALJ did not err in relying on the VE's answer to the hypothetical question, and the VE's testimony constitutes substantial evidence. *See Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) ("Testimony from a VE based on a properly-phrased hypothetical question constitutes substantial evidence.").

### Conclusion

For the reasons discussed above, the Commissioner's decision is AFFIRMED.

**IT IS SO ORDERED.**

Date:   December 5, 2016              /s/ Greg Kays
                                       GREG KAYS, CHIEF JUDGE
                                       UNITED STATES DISTRICT COURT